MICHAEL BAILEY
United States Attorney
District of Arizona
NICOLE P. SAVEL
Assistant United States Attorney
State Bar No.: 015958
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: nicole.savel@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>    vs.<br><br>Jan Peter Meister,<br><br>    Defendant. | CR 19-02738-TUC-RM (JR)<br><br>**GOVERNMENT'S RESPONSE TO DEFENDANT'S APPEAL OF MAGISTRATE'S ORDER OF DETENTION**<br><br>**(ECF #15 – Defendant's Appeal of Magistrate's Order of Detention)** |

Now comes The United States of America, by and through its undersigned attorneys, and hereby submits its Response to Defendant's Appeal of Magistrate's Order of Detention. For the reasons stated herein, the motion to reconsider should be denied.

**I. Facts & Procedural History**

The defendant, Jan Peter Meister, was indicted by a federal grand jury on October 23, 2019 for Count One, Threats Through Interstate Commerce, in violation of Title 18, United States Code §875(c). The charge stems from a phone call that the defendant made on October 1, 2019, when the defendant called and left a threatening message on the Washington District Office voicemail system of Congressman A.S., and stated: "Yeah, go fuck your mother, you son of a bitch cause I'm gonna fucking blow your brains out you fucking piece of shit mother, fucker, you're a fucking piece of shit. You fucking piece of shit mother fucker. Yeah watch. I'm gonna fuck your asshole you piece of shit son of a bitch. Yeah come get me. I guarantee I'll fuck your brains out."

United States Capitol Police (USCP) determined through caller ID and additional investigation that the defendant was the owner and subscriber of the identified caller phone number.  On October 3, 2019, USCP went to the defendant's residence to make contact with him regarding the threating voice mail and to assess the potential threat.  Because the gate at the end of the driveway was secured, agents could not approach his residence, which is a fifth wheel mobile home.  The defendant was reached at the known phone number, and he agreed to come to the gate to speak with agents.  The defendant agreed to an interview, acknowledged he was the owner and user of the number, and referenced his outgoing phone logs in the presence of both Agents and confirmed making a call to the victim number.  Agents played the threatening message for the defendant, and he stated he was intoxicated, and did not specifically remember making the phone call; however, he acknowledged that he obviously made the call.  When asked about weapons, the defendant denied owning any weapons except a "muzzleloader"[1] rifle for hunting, but said he had not yet used the weapon.

Follow-up investigation was conducted by the USCP, to include further research into the defendant's criminal history and his status as a prohibited possessor of firearms.  Online publicly accessible court records indicate that the defendant's right to possess firearms (in Arizona, not federally) were restored by a Maricopa County Superior Court Judge in CR2001-09364, CR2001-096183, and CR2002-095446, and these three separate Aggravated DUI convictions were ordered expunged, despite his probation being revoked in two of the cases in 2002.  The defendant is a convicted felon out of Maryland for two separate sex offenses.  The defendant was convicted of Rape in the Second Degree in 1989 in Maryland, and was sentenced to 15 years prison (12 years, 9 months suspended) and 5 years' probation.  The defendant was found in violation of his probation and sentenced to

---

[1] A muzzleloader is any firearm into which the projectile and usually the propellant charge is loaded from the muzzle of the barrel and is typically not considered a "firearm" under federal law.  A muzzleloader would likely not be considered a federally prohibited firearm for convicted felons such as the defendant.

5 years in prison in 1996. The defendant was also convicted of Sexual Offense/Fourth Degree and Contributing to the Delinquency of a Minor in 1989 and sentenced to 1 year in prison and 3 years in prison, respectively, to run concurrently with one another. Additionally, the defendant has prior conviction for DUI (2000), Disorderly Conduct (2001), Assault (2000), and is a registered sex offender.

In an abundance of caution and due to ongoing safety concerns, a search warrant was sought and later executed at the defendant's property he shares with his wife on October 18, 2019. In addition to a fifth wheel trailer that the defendant and his wife reside in as the sole occupants, there were four vehicles and a shipping/storage container on the property. During the search, agents located firearms and ammunition that were clearly accessible to the defendant and strategically located within the trailer. In the only bedroom located in the fifth wheel trailer, agents found a Taurus .380 caliber handgun with loaded magazine in a nightstand, and black powder revolver in a drawer by the bed. Propped up by the bed in its case, agents located a black powder muzzleloader rifle with a firing kit. Another black powder revolver was located at the entryway of the trailer, placed for what would appear to be easy access in the lap of a statue. In an unlocked separate storage container, an American Tactical Rifle with a case and three magazines, and a 9mm handgun with a loaded magazine, were located by agents. Corresponding ammunition for the firearms/weapons was located throughout the property, to include the bedroom closet, the storage container, and an additional exterior storage compartment on the trailer. Over 700 rounds of ammunition were located by agents.

During an interview after the search, the defendant admitted to firing a black powder weapon multiple times, despite his previous denial to USCP on October 3. The defendant expressed that he planned to get a safe to lock up the prohibited firearms his wife owns so that they weren't accessible. With that, he asked when they could get the seized guns back. The government intends to seek a superseding indictment against the defendant for Possession of Firearms and Ammunition by a Prohibited Person (previously convicted of

a crime punishable by a term of imprisonment exceeding one year), in violation of Title 18, United States Code § 922(g).

The defendant was expeditiously indicted for the threat to the Congressman before the next sitting federal grand jury, on October 23, 2019, and an arrest warrant was issued. When agents went to serve the arrest warrant on October 25, 2019 at 7:00 am, the defendant made unsolicited statements and cursed at agents, such as: "Fuck A.S" (the defendant stated the alleged victim's full name). During the transport of the defendant that morning, the transporting agent noted a strong odor of alcohol emanating from the defendant.

The defendant was detained by the court at his initial appearance, pending a detention hearing and arraignment, which occurred on October 29, 2019. At the detention hearing, the government argued for detention and requested a dangerousness hearing, should the court be inclined to release the defendant. After argument by both counsel, Magistrate Judge Jacqueline Rateau detained the defendant, adopting the recommendation of Pretrial Services that the defendant is both a risk of flight and a danger. The defense was given leave by the Court to file an appeal, which was filed on November 1, 2019. For the foregoing reasons, the defendant's appeal to be released should be denied, as the defendant poses a risk of nonappearance and a danger to the community.

**II. Law and Argument**

18 U.S.C. § 3142(f) states that the detention hearing may be reopened at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing. It is the government's position that the detention hearing should not be reopened, because there is no information presented by the defendant in his motion to reconsider that would be considered information that was not known to the defendant at the time of previous hearings. His background and criminal history, along with the possibility of employment if he were to be released, were all known at the time of the detention hearing.

Should the Court decide to reopen the issue of detention, the defendant's motion should be denied. A person facing trial is entitled to release under the least restrictive

conditions or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(c)(1)(B); *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). In certain cases, the government may move for detention. As the Supreme Court has stated, "[t]he Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." *United States v. Salerno*, 481 U.S. 739, 747 (1987)(citing 18 U.S.C. § 3142(f)). On a motion for pretrial detention, the government bears the burden of showing that the defendant poses a risk of flight by a preponderance of the evidence, or that the defendant is a danger to the community by clear and convincing evidence. *Motamedi*, 767 F.2d at 1406-07.

The Ninth Circuit described the factors a court is to consider in determining whether a defendant should be released on conditions or detained. Section 3142(g) specifies the various factors that must be considered in determining whether there are conditions of release that will reasonably assure the appearance of the person and the safety of the community. 18 U.S.C. § 3142(g).

> These factors are: (1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id.*; [*United States v.*] *Motamedi*, 767 F.2d [1403] at 1407 [(9th Cir. 1985)]. Of these factors, the weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt. *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *Motamedi*, 767 F.2d at 1408.

*United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). Based on the factors cited in *Gebro* above, the defendant poses a risk of nonappearance and should be detained.

**Nature and Seriousness of Crime**

In the instant case, the nature and seriousness of the charges weigh in favor of

continued detention. The Defendant was indicted by a federal grand jury for Threats Through Interstate Commerce, in violation of Title 18, United States Code §875(c). As noted previously, the government also intends to seek a superseding indictment charging the defendant with Possession of Firearms and Ammunition by a Prohibited Person, in violation of Title 18, United States Code, § 922(g). Consideration of the offense charged also involves consideration of the penalties. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). If convicted, the defendant faces a maximum of five years' imprisonment for the threats charge, as well as a maximum penalty of ten years on the firearms/ammunition charge. As the defendant notes in his appeal, at present there is not a statutory presumption in favor of detention for the charged threats offense; however, if indicted on the firearms/ammunition charge, there will be a presumption in favor of detention pursuant to 18 U.S.C. §3142(e), as the defendant would face the possibility of a maximum penalty of ten years' imprisonment.

## Weight of the Evidence

A federal grand jury indicted the defendant for Threats Through Interstate Commerce, such that their determination and the weight of the evidence against the defendant demonstrates that detention is appropriate.

## Defendant's Character

The third factor to consider is the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history. The defendant's criminal history includes: two separate felony sex offense convictions involving minors (offense reports indicted the girls were 13 and 14 years old at the time of the offenses for Rape in the Second Degree, and Sexual Offense, Fourth Degree) in the late '80s, for which he must still register as a sex offender; prior convictions for Aggravated DUI (committed in 1999, 2001, and 2002); DUI (2000); Disorderly Conduct-Fighting (2001); and Assault (2000). Law enforcement contacts for which there is no disposition recorded include Aggravated DUI, Interference with Judicial Proceedings, Domestic Assault, Possession of a Firearm by a Convicted Felon, and Driving

on a Suspended License. While these offenses and law enforcement contacts date back to 2002 and earlier, the defendant has shown a lack of compliance with court orders through multiple prior probation revocations resulting in additional imprisonment. Arizona Department of Corrections records also reveal that the defendant had five disciplinary infractions between 2003 and 2004 for staff obstruction and disobeying orders.

With regard to substance abuse issues, the defendant told Pre-Trial Services that he drinks alcohol three times weekly, averaging two alcoholic beverages per sitting, and smokes marijuana monthly. However, the defendant's threatening call to the Congressman appears to be alcohol fueled -- he claimed to agents that he had been drinking and did not remember making the threatening call. When arrested at 7 o'clock in the morning, he smelled of alcohol and cursed at agents. The defendant told Pre-trial Services that he is not interested in treatment and does not think he needs substance abuse treatment.

The defendant does not have strong ties to the community or family. While his appeal of the detention order mentions an adult son living in Arizona, he does not have any contact with him, as reported to Pre-Trial Services. As for brothers living in states on opposite coasts, the defendant does not have any contact with one brother, and has only yearly contact with the other brother. The defendant's wife, who appears to be the only family he maintains regular contact with, purportedly purchased all of the firearms that were found at the residence and on their property, including firearms at their bedside. The residence they live in is a trailer that can easily be hooked to one of their trucks and driven off to live anywhere. The defendant has been unemployed for two years, but, upon his arrest, has now indicated that he has a job waiting for him at his wife's employer. His wife financially supports the defendant, who has only been at the current address for a few months. Except for his wife, who he lived with when the alleged criminal conduct occurred, the defendant has no demonstrable ties to this community.

The defendant poses a substantial risk of flight and nonappearance, and the Magistrate Judge's decision to detain the defendant should be affirmed on this basis.

**Danger to the Community**

The final factor to consider is the nature and seriousness of the danger to the community. This factor also weighs in favor of detention. Pretrial Services noted that the defendant poses a risk of danger based on "the nature of the alleged instant offense, self-reported substance abuse, his prior criminal record which includes three felony convictions, convictions for violent offenses involving children and the disciplinary infractions the defendant received while in Arizona Department of Corrections custody." (PTS Report, dated October 25, 2019, p. 5.)

The defendant is incorrect in his assertion that he did not commit any new offenses during the month he was being investigated after the initial contact with USCP. Agents made contact with the defendant on October 3, 2019, and asked about his threatening call to the Congressman and inquired about any firearms in order to further assess the threat. The defendant told agents that he only had a muzzleloader, which would not necessarily be defined as a prohibited firearm under federal law, but capable of inflicting injury or death. However, when agents executed a search warrant at the defendant's residence just two weeks later, they found multiple firearms and weapons, along with corresponding ammunition and black powder. Three firearms/weapons were found in the defendant's bedroom within reach, with another in the lap of a statute by the front entry-way of the trailer. The defendant successfully petitioned Maricopa County Superior Court to have his rights restored as to his three Aggravated DUI convictions, but he was well aware of his prior Maryland felony sex offense convictions for which he served more than a year, as he continued to register as a sex offender. When interviewed by agents after the search warrant, he expressed a desire to get his "wife's" firearms back as soon as possible, but would put them in a safe so that they weren't accessible to him. He confirmed that he cannot possess firearms as a convicted felon but that he can possess black powder weapons. As noted previously, the government will be seeking to charge the defendant for the firearms and ammunition in the very near future.

On the morning agents arrested the defendant, he smelled of alcohol, cursed at

agents, and stated, "Fuck [the victim] A.S." Even after contacts with law enforcement about the threats and the execution of a search warrant at his residence, the defendant still could not control his use of alcohol or his conduct, nor could his wife. There are no release conditions that can ensure the safety of the community or the alleged victim in this case.

### III. Conclusion

The defendant's prior criminal history, personal history, continuing criminal conduct and the nature of these offenses are overwhelming indicators that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant or protect the community and the victim. For the reasons stated herein, the Court should deny the defendant's motion.

Respectfully submitted this 12th day of November, 2019.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/Nicole P. Savel*

NICOLE P. SAVEL
Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 12th day of November, 2019, to:

Hon. Rosemary Marquez
United States District Court Judge

Elena Kay, AFPD
Attorney for Defendant Jan Peter Meister