MICHAEL BAILEY
United States Attorney
District of Arizona
NICOLE P. SAVEL
Arizona State Bar No. 015958
BEVERLY ANDERSON
Arizona State Bar No. 010547
Assistant United States Attorneys
United States Courthouse
405 W. Congress, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: nicole.savel@usdoj.gov
Email: bev.anderson@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                Plaintiff,<br><br>   vs.<br><br>Jan Peter Meister,<br> aka Peter Meister,<br><br>                Defendant. | CR 19-02738-TUC-RM(JR)<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR SEVERANCE OF COUNTS |

The United States of America, by and through its undersigned attorneys, hereby responds to the Motion to Sever filed in this case by the defendant, Jan Peter Meister. (Doc. 47.) For the reasons set forth in the accompanying Memorandum of Points and Authorities, the government respectfully requests that this Court deny the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**    **Background**

On or about October 1, 2019 at or near Tucson, in the District of Arizona, defendant Jan Peter Meister called and left a voice message on the Washington District Office Voicemail system of Congressman A.S. The explicative laden message included a threat directed towards the Congressman, stating "…I'm gonna fucking blow your brains out…."

1  United States Capitol Police (USCP) determined through caller ID and additional
2  investigation that the defendant was the owner and subscriber of the identified caller phone
3  number.  USCP agents promptly traveled to Tucson to make contact with the defendant to
4  assess the threat posed by the defendant.  On October 3, 2019, USCP, along with a Pima
5  County Sheriff's Deputy arrived at the defendant's residence to investigate the defendant's
6  threat.  Defendant's residence was a fifth wheel mobile home, which is a recreational
7  vehicle capable of being driven away at any time. The agents called the number associated
8  with the threatening call, and the defendant answered and agreed to come to the locked
9  gate at his residence to speak with agents.  The defendant agreed to an interview,
10 acknowledged he was the owner and user of the number, and referenced his outgoing phone
11 logs in the presence of both agents and the deputy.  He confirmed making a call to the
12 victim's number.  Agents played the threatening message for the defendant, and he stated
13 he was intoxicated, and did not specifically remember making the phone call; however, he
14 acknowledged that he obviously made the call.  When asked about weapons, the defendant
15 denied owning any weapons except a "muzzleloader" rifle[1] for hunting, and denied ever
16 using the weapon.

17  Despite the defendant's cooperation with agents on October 3, agents continued to
18 be concerned.  USCP were aware of upcoming public events that would soon place the
19 victim and other members of Congress in California, in much closer proximity to the
20 defendant, who had demonstrated his volatility, had the means to travel and, by his own
21 admission, possessed a lethal weapon.  Follow-up investigation was conducted by the
22 USCP, to include further research into the defendant's criminal history and to confirm his
23 status as a prohibited possessor of firearms.

---

[1] A muzzleloader is any firearm into which the projectile and usually the propellant charge is loaded from the muzzle of the barrel and is typically not considered a "firearm" under federal law.  A muzzleloader would likely not be considered a federally prohibited firearm for convicted felons such as the defendant.

Follow-up investigation was conducted by the USCP, to include further research into the defendant's criminal history and his status as a prohibited possessor of firearms. USCP learned that the defendant's right to possess firearms (in Arizona, not federally) were restored by a Maricopa County Superior Court Judge in CR2001-09364, CR2001-096183, and CR2002-095446, and these three separate Aggravated DUI convictions were ordered expunged, despite his probation being revoked in two of the cases in 2002. The defendant is a convicted felon out of Maryland for two separate, unrelated offenses. The defendant was convicted of Rape in the Second Degree in 1989 in Maryland, and was sentenced to 15 years prison (12 years, 9 months suspended) and 5 years' probation. The defendant was found in violation of his probation and sentenced to 5 years in prison in 1996. The defendant was also convicted of Sexual Offense/Fourth Degree and Contributing to the Delinquency of a Minor in 1989 and sentenced to 1 year in prison and 3 years in prison, respectively, to run concurrently with one another. Additionally, the defendant has prior convictions for DUI (2000), Disorderly Conduct (2001), Assault (2000), and is a registered sex offender.

Due to the ongoing safety concerns, a search warrant was sought and later executed at the defendant's property he shares with his wife on October 18, 2019. During the search, agents located numerous firearms and hundreds of rounds of ammunition that were clearly accessible to the defendant and strategically located within the trailer. In the only bedroom located in the fifth wheel trailer, agents found a Taurus .380 caliber handgun with loaded magazine in a nightstand, and black powder revolver in a drawer by the bed. Propped up by the bed in its case, agents located a black powder muzzleloader rifle with a firing kit. Another black powder revolver was located at the entryway of the trailer, placed for what would appear to be easy access in the lap of a statue. In an unlocked separate shipping container located on the property, an American Tactical Rifle with a case and three magazines, and a 9mm handgun with a loaded magazine were located by agents. Corresponding ammunition for the firearms/weapons was located throughout the property, to include the bedroom closet, the storage container, and an additional exterior storage

1  compartment on the trailer.  Over 700 rounds of ammunition of various caliber were located
2  by agents.  There were also four vehicles located on the property.

3        During an interview after the search, the defendant admitted to firing one of the
4  black powder weapons multiple times, despite telling USCP on October 3 that he had ever
5  fired the weapon.  The defendant also admitted to recently handling the American Tactical
6  semiautomatic rifle about 1 ½ months prior to determine what parts to buy for a needed
7  repair.  The defendant acknowledged that he did not think he could purchase or possess
8  firearms due to his Maryland convictions.  He claimed that the prohibited firearms were
9  his wife's and that he planned to get a safe to lock up the prohibited firearms his wife owns
10 so that they weren't accessible.  With that, he asked when he could get the seized guns
11 back.

12       The defendant was expeditiously indicted for the threat to the Congressman before
13 the next sitting federal grand jury, on October 23, 2019, and an arrest warrant was issued.
14 When agents went to serve the arrest warrant on October 25, 2019 at 7:00 am, the defendant
15 made unsolicited, derogatory statements and cursed at agents, such as: "Fuck A.S" (the
16 defendant stated the alleged victim's full name). During the transport of the defendant that
17 morning, the transporting agent noted a strong odor of alcohol emanating from the
18 defendant.

19       The firearms and ammunition seized at the defendant's residence were placed in
20 evidence pending examination and a nexus determination for potential charges such as
21 possession of firearms and ammunition by a prohibited person.  An interstate nexus expert
22 subsequently confirmed that three of the firearms seized and the rounds of ammunition
23 possessed by the defendant were manufactured outside the state of Arizona, thus affecting
24 interstate and/or foreign commerce.

25       On December 4, 2019, the defendant was indicted on a superseding indictment, to
26 include the previous charge, Count One, Threats Though Interstate Commerce, and Count
27 Two, Possession of Firearms and Ammunition by a Prohibited Person (previously
28 convicted of a crime punishable by a term of imprisonment exceeding one year), in

violation of Title 18, United States Code § 922(g).   The defendant requests that Counts One and Two be severed and tried separately.  Trial is presently set for March 9, 2019.  For the reasons stated herein, the motion to sever should be denied.

**II.     Law and Argument**

   **A.  Legal Standard**

Counts are properly joined under Rule 8(a) of the Federal Rules of Criminal Procedure if they (1) are of the same or similar character, (2) are based on the same act or transaction, or (3) are connected or constitute parts of a common scheme or plan.  Fed.R.Crim.P. 8(a). "Rule 8 has been 'broadly construed in favor of initial joinder'" of offenses. *United States v. Jawara*, 474 F.3d 565, 573 (9th Cir. 2007) (*citing United States v. Friedman*, 445 F.2d 1076, 1082 (9th Cir. 1971)).

Rule 14 of the Federal Rules of Criminal Procedure provides that the court may grant a severance if a defendant is prejudiced by a joinder of offenses.  Fed.R.Crim.P. 14. "[J]oinder is the rule rather than the exception." *United States v. Armstrong*, 621 F.2d 951, 954 (9th Cir. 1980).   "Rule 14 sets a high standard for a showing of prejudice." *United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994).  It is the defendant's burden to establish that severance is necessary, and severance is only required where joinder is "so manifestly prejudicial that it outweigh the dominant concern with judicial economy and compel[s] the exercise of the court's discretion to sever." *United States v. Lopez*, 477 F.3d 1110, 1116–17 (9th Cir. 2007) (internal citation and quotation omitted).

The existence of some prejudice is not sufficient to require severance. Severance is only necessary in those rare cases where a jury cannot "reasonably be expected to compartmentalize the evidence so that evidence of one crime does not taint the jury's consideration of another crime." *United States v. Johnson*, 820 F.2d 1065, 1071 (9th Cir. 1987) (internal quotation omitted); *see also Vasquez-Velasco*, 15 F.3d at 846 ("In assessing whether joinder was prejudicial, of foremost importance is whether the evidence as it relates to the individual defendants is easily compartmentalized.").

Such prejudice is more likely to exist where the counts joined together are "similar in nature." *Id*. However, prejudice may be mitigated through the use of proper jury instructions. *See Johnson*, 820 F.2d at 1071 (upholding a district court's decision not to sever counts where the court instructed the jury that "[e]ach count charges a separate crime. You must decide separately what the evidence in the case shows about the crime"). Prejudice is also lessened where the joined charges are wholly separate incidents, and thus permit the jury to separate the charges from each other. *See Vasquez-Velasco*, 15 F.3d at 846 (finding that even where the crimes committed were similar in nature, their joinder was not prejudicial because each charge occurred a week from the other, and "[a]s such, they were discrete acts that a jury could compartmentalize reasonably easily").

A defendant seeking severance bears the burden of proving "clear, manifest, or undue prejudice from the joint trial, that it violates one of his substantive rights, so that the prejudice is of such a magnitude" that, without severance, he will be denied a fair trial. Id. at 845-46; *see also United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996); "Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993).

A defendant is not entitled to severance merely because it may provide him a better chance of acquittal; "a fair trial does not include the right to exclude relevant and competent evidence." Id. at 540. "Serious consideration is properly to be given to the factor of judicial economy by the trial court in the exercise of its discretion when severance is sought." *United States v. Kennedy*, 564 F.2d 1329, 1334 (9th Cir. 1997). Furthermore, jury instructions explaining the nature of the separate charges and limiting the consideration of evidence to the appropriate charges can eliminate the potential for prejudice. *Id*.; *United States v. Monks*, 774 F.2d 945, 949 (9th Cir. 1985).

**B. Severance is Inappropriate**.

1. The defendant will not be unduly prejudiced from a joint trial.

The defendant argues that severance of the two counts is necessary to prevent the defendant from being unfairly prejudiced at trial, and cites to *United States v. Nguyen*, 88 F.3d 812 (1996), in support of his argument. However, in *Nguyen*, the Ninth Circuit upheld the district court's decision not to sever the counts against the defendant. *Id*. at 818. The Ninth Circuit noted that "trying a felon in possession count together with other felony charges creates a very dangerous situation because the jury might improperly consider the evidence of a prior conviction when deliberating about the other felony charges." *Id*. at 815. However, the Ninth Circuit subsequently emphasized that where "[e]ach of the alleged offenses arose from the same act or transaction, and there was significant overlap in the evidence for all charges," concerns for judicial economy "outweigh[ed] any limited prejudice that [the defendant] may have experienced." *Lopez*, 477 F.3d at 1117.

The charges joined together in this case involve overlapping evidence, and thus the interests of judicial economy strongly favor joining the charges in a single trial to avoid duplicative proceedings. The threat the defendant admitted to making against A.S., to "blow his fucking brains out,' involves a threat to use a firearms to do so, and the threat itself led to the search of the defendant's residence in search of firearms and other evidence associated with the threat. Furthermore, finding the firearms in the defendant's home made the defendant's threat more compelling and believable.

The elements of Count One, Threats Through Interstate Commerce, are as follows:

First, the defendant knowingly transmitted in interstate commerce a form of communication containing a threat to injure a person.

Second, such form of communication was transmitted for the purpose of issuing a threat, or with knowledge that the communication would be viewed as a threat.

The government need not prove that the defendant intended to carry out the threat.

*See* Jury Instruction 8.47B, Manual of Model Jury Instructions, Ninth Circuit.

Furthermore, the comment to the jury instruction indicates that "[W]hether a particular statement may be considered a threat is not governed by an objective standard. The mens rea of the crime involved in communicating a threat is established through proof that a

defendant makes a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." *Citing to Elonis v. United States*, 135 S.Ct. 2001 (2015). *Elonis* requires that the government prove that the communication would be objectively viewed by a reasonable person as a true threat, as well as subjectively that defendant acted with the knowledge that the communication would be viewed as a threat. *Id*.

As to Count Two of the Superseding indictment, the government must prove beyond a reasonable doubt:

First, the defendant knowingly possessed a firearm and/or specify ammunition;

Second, the firearm and/or ammunition had been shipped or transported from one state to another;

Third, at the time the defendant possessed the firearm and/or ammunition, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and

Fourth, at the time the defendant possessed the firearm and/or ammunition, the defendant knew he had been convicted of [specify prior felony].

While the government is not required to prove that the defendant intended to carry out the threat for it to be a true threat, evidence of his possession of firearms will be highly probative regarding defendant's state of mind. The defendant claims that he did not intend the threat, that it was a drunken call. As defendant notes in his motion, at page 4, the entire context and all of the circumstances surrounding the threat should be examined to determine whether the communication involves a true threat. The facts and circumstances of the defendant's conduct and the agents' subsequent interviews of the defendant are all highly probative and largely overlapping as to both counts.

Even with the government's burden to prove a true threat, the threats charge alleges a wholly separate crime from the prohibited possessor charge. Each requires the government to establish evidence that is separate and apart from the other charge. Additionally, the Court can consider steps to mitigate whatever prejudice the defendant may face from a

joined trial. Limiting jury instructions may be given to the jury to emphasize that it may not consider the defendant's prior convictions as evidence of guilt in the threat charge. Further, the nature of the prior convictions can be sanitized or stipulated to by the defendant, if he so chooses.

It is the government's position that a jury would be able to separate the evidence for the two counts and consider each crime individually. The facts and circumstances of the entire investigation, to include the defendant's possession of firearms, are relevant to the government's burden to prove a true threat as to Count One. In the absence of undue prejudice to the defendant, the interests of judicial economy strongly favor joining the counts in a single trial to avoid duplicative proceedings.

### III. Conclusion

Defendant has not met his burden to establish that severance is necessary. Consequently, any potential prejudice is far outweighed by the compelling interests of judicial economy and the probative value of the evidence of both offenses. For these reasons, the government respectfully requests that the Court deny the defendant's motion to sever in its entirety.

Respectfully submitted this 11th day of February, 2020.

                MICHAEL BAILEY
                United States Attorney
                District of Arizona

                *s/ Nicole P. Savel*

                NICOLE P. SAVEL
                Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 11th day of February, 2020, to:

Bradley Roach, Esq.
Attorney for Defendant