**ROACH LAW FIRM, L.L.C.**
Brad Roach, Esq.
101 E. Pennington St, Suite 201
Tucson, AZ 85701
(520) 628-4100
State Bar No. 017456

**Attorney for: Jan Peter Meister**

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>　　　　　Plaintiff,<br><br>vs.<br><br>Jan Peter Meister,<br>　　　　　Defendant. | CR 19-02738-TUC-RM (JR)<br><br>RESPONSE TO GOVERNMENT'S MOTION IN LIMINE RE HEARSAY STATEMENTS AND GOVERNMENT'S NOTICE OF INTENT TO USE RULE 404(b) MATERIAL |

　　　Jan Peter Meister hereby files his combined Responses to the *Government's Motion In Limine Re Hearsay Statements* and the *Government's Notice Of Intent To Use Rule 404(b) Material*.

　　　*Government's Motion in Limine Re Hearsay Statements:*

　　　The Government indicates that during its case-in-chief it intends to offer, as admissions of a party opponent, certain out of court statements made by Mr. Meister. The Government also seeks to preclude, as self-serving hearsay, certain exculpatory statements he made during those same interviews. The Government cites *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) in support of its attempt to preclude the so-called exculpatory statements. *Ortega* is instructive in this situation, but is not controlling. It does not address or account for other grounds of admissibility that will be discussed below.

1) It is important to note that the defendant in *Ortega* advanced four main contentions in support of his position that the trial judge erred by precluding his self-exculpatory statements because the ruling 1) violated the rule of completeness; 2) violated the Confrontation Clause; 3) the statements were admissible as prior consistent statements under Federal Rule of Evidence 801(d)(1) and would have been offered to rebut the government's charge of recent fabrication; and 4) the district court should have introduced the exculpatory statements under Federal Rule of Evidence 807 in order to serve the interests of justice.

The 9th Circuit relied heavily on Fed. R. Evid. 106 in upholding the trial court's ruling:

> Second, the rule of completeness, *see* Fed. R. Evid. 106 (requiring that the redacted version of a statement not distort the meaning of the statement), ***applies only to written and recorded statements***. *See United States v. Collicott*, 92 F.3d 973, 983 (9th Cir. 1996) (finding that "rule 106 'does not compel admission of otherwise inadmissible hearsay evidence'") (quoting *Phoenix Associates III v. Stone*, 60 F.3d 95, 103 (2d Cir. 1995)). Because the officer's testimony concerned an unrecorded oral confession, the rule of completeness does not apply. Even if the rule of completeness did apply, exclusion of Ortega's exculpatory statements was proper because these statements would still have constituted inadmissible hearsay. See *Collicott*, 92 F.3d at 983. Id. 682.

The learned District Judge in *United States v. Bailey*, 322 F. Supp. 3d 661(2017) reviewed the entire history of Fed. R. Evid. and debunked much of the reasoning in *Bailey*. In doing so, he articulated at least three compelling grounds why this Court should deny the Government's *Motion in Limine*.

(A.) **The Residual Common-Law Completeness Doctrine**.

*Bailey* recognized that the United States Supreme Court as well as other treatises have found that:

> …***Rule 106 only partially codifies the common law doctrine of completeness, and for situations beyond the reach of Rule 106***, ***the common law still applies***. *Beech Aircraft*, 488 U.S. at 170-72; 1 Kenneth S. Broun, *McCormick on Evidence § 56*, at 392 n.5 (7th ed. 2013) ("In *Beech Aircraft Corp. v. Rainey*, the Court indicated that Rule 106 'partially codified' the completeness doctrine. The implication is that the uncodified

aspect of the doctrine is still in effect in federal court."); 21A *Wright & Graham*, supra, § 5072.1 (stating that *Beech Aircraft* "impliedly held that Rule 106 does not repeal the common law completeness doctrine"). *Id*. at 670.

*Bailey* identified the common law completeness doctrine as follows:

A. Common-Law Doctrine
"The common law responded to these abuses of the adversary system by a limited restriction on party control of the cases that . . . [is called] 'the completeness doctrine.'" 21A *Wright & Graham*, supra, § 5072. Wigmore's description of the rule of completeness was that "[i]n evidencing the tenor of an utterance material or relevant, made in words, whether written or oral in original or in copy, the whole of the utterance on a single topic or transaction must be taken together." Id. (quoting John Henry Wigmore, *Code of Evidence 371 (3d ed.* 1941)). The influential *Field Code* codified the common law rule of completeness in this manner:

When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other; when a letter is read, the answer may be given; and when a detached act, declaration, conversation or writing is given in evidence, any other act, declaration, conversation or writing, which is necessary to make it understood, may also be given in evidence. Id. (quoting *N.Y. Commissioners on Practice and Pleading, Code of Civil Procedure § 1687*, at 704-05 (1850)).

*A careful reader will notice straightaway that in its common-law and early-code-law expression, the doctrine of completeness encompassed conversations* and other spoken utterances (as well as acts) *that had not been memorialized in writing or recorded.* Another important feature of the common-law doctrine of completeness was that *it allowed the introduction of otherwise inadmissible evidence to give proper context to the incomplete and misleading evidence offered by the original proponent.* Id. § 5072 *("Thus, the opponent can introduce what would otherwise be hearsay to complete a truncated statement offered by the proponent."* (citing *Crawford v. United States*, 212 U.S. 183, 201, 29 S. Ct. 260, 53 L. Ed. 465 (1909))). *Id*. at 664. (Emphasis added.)

In short, the statements at issue here are beyond the reach of the Rule 106 requirement that the statements be written or recorded and are therefore covered by the common law rule of completeness that does allow statements that were not recorded or memorialized and allows the

- 3 -

introduction of otherwise inadmissible evidence to give proper context to the incomplete and misleading evidence offered by the original proponent.

(B.) **Rule 611's Connection to Rule 106:**

*Bailey* also discussed the interplay between Rules 611 and 106 and cites substantial authority for allowing the introduction of statements that have not been memorialized in writing or recorded:

> Rule 611's Connection to Rule 106
> Courts, too, have found the means to rectify abuses of the adversary system caused by incomplete or misleading renditions of oral statements by resorting to Fed. R. Evid. 611(a), which provides, in relevant part:
> The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth.
>  In *United States v. Pacquette*, 557 F. App'x 933 (11th Cir. 2015), the court held "Rule 106 does not apply to oral statements. However, we have extended the fairness standard in Rule 106 to oral statements 'in light of Rule 611(a)'s requirements that the district court exercise reasonable control over witness interrogation and the presentation of evidence to make them effective vehicles for the ascertainment of truth.'" Id. at 936 (internal quotation marks and citation omitted) (quoting *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005)); see also *United States v. Verdugo*, 617 F.3d 565, 579 (1st Cir. 2010) (noting that the district court "retained substantial discretion under Fed. R. Evid. 611(a) to apply the rule of completeness to oral statements"); ***United States v. Collicott, 92 F.3d 973, 983 n.12 (9th Cir. 1996) (noting, without disagreement, that other circuits have held that Rule 611(a) gives district courts the same authority regarding oral statements that Rule 106 gives regarding to recorded statements)***; *United States v. Branch*, 91 F.3d 699, 727-28 (5th Cir. 1996) (noting, without disagreement, that "[o]ther circuits have held that Rule 611(a) imposes an obligation for conversations similar to what rule 106 does for writings"); *United States v. Li*, 55 F.3d 325, 329 (7th Cir. 1995) (holding that Rule 106 does not apply to oral statements, but observing "we . . . have held that Fed. R. Evid. 611(a) grants district courts the same authority regarding oral statements which Fed. R. Evid. 106 grants regarding written and recorded statements"); United States v. Haddad, 10 F.3d 1252, 1258 (7th Cir. 1993) ("[Rule 106] refers to written or recorded statements. However, Rule 611(a) gives the district courts the same authority with respect to oral statements and testimonial proof."); *Alvarado*, 882 F.2d at 650 n.5 (holding that Rule 106 applies to writings, but Rule

611(a) "renders it substantially applicable to oral testimony as well"). *Id.* at 671-672.(Emphasis added.)

(C.):   **Rule 403**

*Bailey* provides additional support for the admissibility of the contested statements:

> Finally, Fed. R. Evid. 403 should not be overlooked when considering the implications of the rule of completeness as it relates to writings, recordings, and oral statements. Rule 403 states:
> The court may exclude relevant evidence if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusion the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.
> Even in circuits (such as the Fourth Circuit) that seem to limit Rule 106 to written or recorded statements and that do not appear to allow the introduction of evidence under the rule of completeness to rectify the unfairness caused by the introduction of a misleadingly incomplete description of the content of a writing, recording, or oral statement unless it is independently admissible, *Hassan*, 742 F.3d at 134-35; *Wilkerson*, 84 F.3d at 696, ***a trial court is not powerless to address an abuse of the adversary system.*** If allowing a government witness to testify only to a defendant's inculpatory statements, without being subject to cross examination about the exculpatory portions of the same statement (because they are not independently admissible) would leave the jury with a misleading understanding of the defendant's statement to the extent that it would cause unfair prejudice, ***the court may give the government a choice: either allow cross examination to provide a complete picture of what the defendant said; or exclude the testimony of the incomplete portion of the statement.*** *Id.* at 673.(Emphasis added.)

2) An additional consideration as to why the statements should not be excluded is because they constitute *Brady* material indicative of Mr. Meister's subjective state of mind which is the determinative issue in this case. Under those circumstances, the exclusion of those statements would be a violation of Due Process.

The Government acknowledged in its *Response* (Doc 50) to Mr. Meister's *Motion to Sever* (Doc 47) that there is a *subjective* element of proof in Count One, and in the words of the *Comment* to the jury instruction on this issue (8.47A), the Government must prove that, "the

speaker must subjectively intend to threaten." In other words, as argued in the *Motion to Sever*, the jury will need to decide whether the message left on the Congressman's voice mail was a "true" threat or whether they were merely alcohol-fueled rants. The Defendant's *Motion to Sever Counts* as well as his *Reply* (Doc 51) to the Government's opposition set forth a *partial summary* of the statements the Government now seeks to exclude:

> *He apologized for the call, further stating that, "that's out of character for me."*
>
> *Agents explained that the call was to Congressman Adam Schiff.*
> *MEISTER responded that he watches Fox News and likely was upset at something that he saw on the news. He stated that he strongly dislikes the Democrats, and feels they are to blame for the country's political issues*
>
> *MEISTER stated that he likely Goggled* (sic) *the Congressman's office number to make the call.*
>
> *MEISTER stated that he drinks 3 times per week*
>
> *He denied any plans to act on the voicemail threat.*
>
> *He denied any plans to travel to any political offices or events.*
>
> *-MEISTER denied any affiliations with any groups, and further denied any interest in assassins or any possession of journals or manifestos related to public officials*
>
> *-MEISTER denied any homicidal or suicidal ideations, and denied any history of mental illness.*

A search warrant was later executed at Mr. Meister's residence, but the fruits of that search revealed no indicia of any plans to do harm to any political figure nor were there any social media indications that he planned to do any harm to any person or institution.

The Court is asked to conduct a hearing to determine the exact statements Mr. Meister believes are relevant and should be admissible at trial and to make offers of proof as to all statements precluded by the Court.

> *Government's Notice of Intent to Use Rule 404(b) Material:*

The statements the Government wishes to admit as other act evidence do not qualify logically or legally nor do they withstand 1st Amendment analysis. Specifically, as will shown below, they are not relevant under USCS Fed Rules Evid R 402; the statements should be excluded because they tend to confuse the issues, mislead the jury, create undue delay in the proceedings and are a waste of time under USCS Fed Rules Evid R 403; and do not satisfy a recognized ground of admissibility under USCS Fed Rules Evid R 404(b).

The Government argues that the calls to Rep. Nadler and Sen. McCain satisfy the 9th Circuit's four part test for admissibility and should therefore be admissible. However, the 9th Circuit's four part test for admissibility is based upon *Huddleston v. United States,* 485 U.S. 681, 689, 99 L.Ed 2d 771, 108 S. Ct. 1496 (1988) which has been severely criticized by legal commentators, specifically, Dora W. Klein, *The (Mis)application of Rule 404(b) Heuristics*, 72 U. Miami L. Rev. 706 (2018), where the author noted:

> In all of the federal circuit courts of appeals, application of Rule 404(b) of the Federal Rules of Evidence has been distorted by judicially-created "tests" that, while intended to assist trial courts in properly admitting or excluding evidence, do not actually test for the kind of evidence prohibited by this rule. Rule 404(b) prohibits evidence of "crimes, wrongs, or other acts" if the purpose for admitting the evidence is to prove action in accordance with a character trait. This evidence is commonly referred to as "propensity" evidence, or "once a drug dealer, always a drug dealer" evidence.
> This Article examines three counter-productive heuristics that the federal circuit courts of appeals have created: (1) multi-factor tests based on a paragraph of dicta from the Supreme Court's opinion in *Huddleston v. United States*; (2) a set of "exceptions" based on a misreading of the list of permitted purposes for admitting other-acts evidence found in Rule 404(b)(2); and (3) a set of additional "exceptions" extrapolated from an advisory committee note's reference to "intrinsic" evidence. Recently, the U.S. Court of Appeals for the Seventh Circuit, in an en banc decision, recognized that its approach to Rule 404(b) had become so distorted that a new approach was required.

The four part test was replaced in the 7th Circuit by *United States v. Gomez*, 763 F.3d 845, 860 (7th Cir.):

>In sum, to overcome an opponent's objection to the introduction of other-act evidence, the ***proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way***. See Fed. R. Evid. 401, 402, 404(b). Other-act evidence need not be excluded whenever a propensity inference can be drawn. But its *relevance to "another purpose" must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case*. If the proponent can make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great. ***The court's Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case***. *United States v. Gomez*, 763 F.3d 845, 860 (7th Cir.) (Emphasis added.)

The *Gomez* approach rejecting the 9th Circuit four part test was recently acknowledged and applied in the 9th Circuit in *United States v. Rodriguez*, 880 F.3d 1151; 2018 U.S. App. LEXIS 2323(2018) where the 9th Circuit noted: "This logical connection must be "supported by some propensity-free chain of reasoning." *United States v. Gomez, 763 F.3d 845, 856 (7th Cir. 2014)* (en banc).

The Government asserts intent and lack of mistake or accident as grounds for admissibility, however, Mr. Meisner has never claimed that he made the call at issue by accident or mistake. He has maintained throughout that he was drunk and had no intention of carrying through on his statement. Parenthetically, the Government has not disclosed a scintilla of evidence, such as social media postings, analysis of his computer searches, etc that he had the actual intent follow through and / or harm the victim.

Similarly, the Government offers *no cogent* argument in support of "intent" as a basis for admitting the Nadler/McCain messages. Exactly what "intent" it supports is unexplained.

The proverbial 400-pound gorilla in the room is the First Amendment to the United States Constitution. The comments the government seeks to introduce under 404(b) are, aside

- 8 -

from being totally irrelevant, clearly protected speech under the First Amendment. Citizens are free to express their displeasure with politicians and to suggest that a politico should resign from office, etc. Referring to Sen. McCain as a "dick" is virtually meaningless. Merriam-Webster defines "dick" as "a mean, stupid, or annoying man." There is nothing inherently sinister about the expression. There is nothing that even approaches a threat of bodily harm by that choice of words.

Enjoining Rep. Nadler to "resign" is a *legitimate and protected* form of protected speech. The uncommunicated message is extremely ambiguous in that it does not specify whether Rep. Nadler should resign his from Congressional seat altogether or simply from his post as Chairman of the House Judiciary Committee. In either event, there is nothing ominous or menacing about the statement.

Neither of the Nadler/McCain comments are even remotely relevant to the allegations in the Indictment. Contrary to the Governments claim, there is *nothing similar* about the messages other than they were all made by Mr. Meister. The significant difference, that renders the comments dissimilar is that there is *not even a hint of violence* in either of the Nadler/McCain comments. Surely it occurred to the Government that the comments at issue were non-threatening expressions of free speech, yet the Government chose not to even attempt make a case that they were otherwise.

Accordingly, the Court is urged to overrule the Government's objections to admitting prior statements, through cross-examination or otherwise, that tend to negate his subjective intent to threaten A.S. and deny the Government's motion to admit the innocuous Nadler/McCain comments.

Respectfully submitted this 28th day of February 2020.

ROACH LAW FIRM, L.L.C.

                                      <u>/s/ Bradley K. Roach</u>
                                      Bradley K. Roach
                                      Attorney for Jan Peter Meister

Copy of the foregoing served electronically
this 28th day of February 2020,

Nicole Savel, Esq.
Assistant U.S. Attorney